Good morning, your honors. May it please the court. Sean Mather, pro bono counsel on behalf of the appellant Joel Rivera. Your honors, this case boils down to knowledge, and whether Mr. Rivera had advanced knowledge of Mr. Thomas' plan to commit the armed robberies at the 13th Street and the 76th Street dollar stores. I'd like to focus my limited time this morning on the last robbery at the 76th Street dollar store for two reasons. Number one, we have a material break in the government's pattern of conduct theory, meaning we can no longer rely on the prior robberies to infer Mr. Rivera's advanced knowledge of the last robbery. Number two, Mr. Rivera's 924C firearm conviction arising out of this robbery resulted in a 25-year mandatory minimum sentence. Under the government's pattern of conduct theory, if the first set of robberies followed a similar pattern, then a jury can reasonably infer that Mr. Rivera had advanced knowledge of other robberies following the same pattern. And under this pattern, Mr. Rivera and Mr. Thomas would ride together to a store. Mr. Rivera would go into the store first, seemingly to check the place out and stick around while Mr. Thomas committed the crime in a supervisory role, and then the two men would leave together. But by the time we get to the 76th Street dollar store, the pattern does not fit for at least four reasons. Number one, we have the presence of a third party. Ms. Sias, Mr. Rivera's girlfriend at the time, was present, where neither she nor any other third party were present at any of the prior robberies. Number two, we have a six-day gap between the fourth robbery and the fifth robbery, whereas the first three robberies happened in the span of five days, and the first four robberies happened in the span of seven days. Number three, and as I emphasized in the briefs, Mr. Rivera never entered the 76th Street dollar store. He never went in first to check the place out, make a purchase, and then stick around to supervise as Mr. Thomas committed the crime. Number four, as we see on pages 30, 48, 49, 68, and 79 of the Supplemental Appendix, the government asked Mr. Thomas during direct examination whether he and Mr. Rivera discussed the robbery beforehand. In respect to the second robbery, the government even asked whether Mr. Rivera knew Mr. Thomas was carrying a firearm. But when we get to the fifth robbery, the government never asked the question. They never asked whether Mr. Rivera knew Mr. Thomas was going to use a firearm to commit the robbery. They simply didn't ask the question. The government bears the burden of proof, and they never sought to elicit the critical testimony they needed to prove the essential elements of the crime story. I know you're focused on the 76th Street one, and I appreciate that, and I understand why. Because all five robberies were tried together, do you dispute, though, that the totality of the evidence before the jury could have been considered on any count that they deliberated on? Yes, I agree that the jury can't consider all the evidence. They simply can't say, well, we find Mr. Rivera guilty of one charge and therefore conclude that he was guilty of another charge. They're free to consider all the evidence and draw the reasonable inferences so long as those inferences are based on the evidence. My point is that if the fifth robbery doesn't follow that same pattern, then it's no longer a reasonable inference and it cannot be considered. We have to instead focus on the evidence that pertains to that particular robbery. But didn't it follow some of the pattern? As the judge held assured, the defendant didn't go into the store, but he drove Thomas to the robbery, drove him in the same van. With the fact that he didn't go in, I don't know that that defeats the pattern, as Judge Pepper found. At least two responses, Your Honor. Number one, the district court never addressed in its oral ruling whether this pattern was followed at the 76th Street dollar store robbery. It confined its analysis to the 13th Street dollar store robbery. Number two, in discussing this robbery, the district court focused primarily on Mr. Rivera's role of going into the store and supervising. The government sought to prosecute this crime under the theory that Mr. Rivera was the mastermind behind this elaborate plan. And unless Mr. Rivera goes into the store and exercises that supervisory authority, we have a break in the pattern. Mr. Rivera just simply is no longer the mastermind. We see Mr. Thomas acting out on his own, and in some ways going rogue, if we even look at some of the prior robberies. He decides to call the shots, tell Mr. Rivera what to do. The fourth robbery, which I'd like to not go into unless the court has specific questions, but that robbery was spontaneous, and he testifies that he and Rivera never discussed spontaneous robberies beforehand. Was the equipment that was used in the 76th Street robbery the same equipment used in the prior robberies? I believe there might be some evidence that the firearm was the same, and that the firearm was generally kept in a book bag. But we don't have as clear testimony as we might have with respect to some of the other robberies where Mr. Rivera's not involved. And what's the evidence say with respect to whether the proceeds were split? Mr. Thomas did testify that the proceeds were split after the fact. It's unclear exactly when that might have happened. The testimony, again, kind of seems to drift off towards the end for the last robbery. We have testimony that they left and then they were dropped off, and we have a presumption that the money was split somewhere around that time. But returning to my argument, so in the absence of the government asking these questions, we just have a dearth of evidence of Mr. Rivera's advanced knowledge pertaining to this particular robbery. But what we do have is Ms. Zias' unrebutted testimony that appears on page 192 of the Supplemental Appendix, that when she and Mr. Thomas returned to the van after the robbery, that Mr. Rivera and Mr. Thomas had a hysterical argument where Mr. Rivera was asking Mr. Thomas why he did that. Ms. Zias goes on to testify that they attempted to stop the vehicle to kick Thomas out, but because they could hear sirens all around, they continued to push forward. This testimony, along with the evidence on page 130 of the Supplemental Appendix, that Mr. Thomas was kicked out of Mr. Rivera's home shortly after this robbery, in fact, that very same day, illustrates that Mr. Rivera only learned about this armed robbery after the fact, after it had already occurred. In fact, we have to ask, why would this argument where Mr. Rivera is asking why he did that occur if he knew about it beforehand? But by this time, Mr. Rivera no longer had a reasonable opportunity to quit the crime. We had a tense scene in the van, police were in hot pursuit, Mr. Thomas, not Mr. Rivera, was in possession of the firearm, and we know from Mr. Thomas' own testimony, as seen on page 106 of the Supplemental Appendix, that Mr. Thomas was prone to unpredictable, erratic, and aggressive behavior. As we know from the Rosemont decision, pages 1249 and 1250, any act by Mr. Rivera to quit the crime at this point in time almost certainly would have been met with a violent response from Mr. Thomas, and this was not a risk. Isn't that drawing an inference in favor of your client, which is not what we do in a motion for a new trial? Your Honor, number one, I believe this argument is most relevant to the insufficiency of the evidence argument, but we can make this, the arguments overlap for the new trial as well. Same standard. Same, sure. Right, we don't draw inferences in favor of the defendant, which it sounds like you're asking us to do. My position is it's the only reasonable inference, and that any inference otherwise, any inference that Mr. Rivera could have quit the crime at that point would be an unreasonable inference. Your argument is that the only reasonable inference is that he was afraid of Mr. Rivera at that time, and so he wouldn't? Not that he was in fact afraid, but that there is a strong likelihood that he would be met with a violent response if he sought to quit the crime. Why isn't it, in drawing the evidence in the light most favorable to the government, a viable inference that they had this pattern of acting together in these robberies, and here we are on the fifth one, and he at that point certainly couldn't have been afraid of him because they've been doing this for so long. Number one, Your Honor, the pattern just doesn't fit, right? And number two, Mr. Thomas in the prior robberies displayed a pattern of aggressive behavior, of not being afraid to use a firearm to hit people over the head. Mr. Rivera was not the one committing these violent acts. He just happened to be there. How do you get around the evidence of your client's false exculpatory statements to the police, and the evidence that when the police came to his home that he and his girlfriend locked themselves in the bathroom and were destroying and burning evidence? It's not great evidence, Your Honor, and the government argues that it shows consciousness of guilt or a guilty mind. Right, and the case law supports that. And my argument is essentially that this just shows after-the-fact knowledge, where Rosamond requires advanced knowledge. It requires a logical leap to say that conduct days after the robbery had occurred shows advanced knowledge, knowing that your cohort will use a firearm to commit a crime. So at best it shows recognition that he was there, that he's associated with Mr. Thomas, and he just doesn't want to be in trouble. In fact, just a minute or two ago you said that he didn't use a weapon, but that didn't make any difference whether he was somebody that did use a weapon, so long as the elements are satisfied of intent and facilitation. Now, the government never responds, never addresses the misogynist's testimony in its brief, and instead it argues on page 24 that, according to Thomas, they had a plan, and Miss Ives would go in first, and then Thomas would come in after the fact. But if we look at the testimony that appears on page 164 of the supplemental appendix, there's absolutely no reference to Mr. Rivera at all in that passage, no link to whether Mr. Rivera knew about the robbery or whether he knew about Mr. Thomas' plan to use a firearm. I see that I'm out of time, Your Honors. Unless the Court has further questions, I'll submit. Thank you. Thank you. Good morning. May it please the Court, my name is Ben Wesson. I represent the United States government. Your Honors, I think it goes without saying that the government strongly opposes Mr. Rivera's claim here, where he's essentially resurrecting his Rule 29 and Rule 33 motions at trial and providing the same argument that we have heard not only at closing argument, but through the motions post-trial and now here today. The Court should follow the trial court's decision here and affirm what the jury brought forward in its verdicts and deny the new trial request because it's clear in this case that what Mr. Rivera is doing is misapplying the standards here for review on a Rule 29 judgmental acquittal request, insufficiency of the evidence. Nowhere in the record does it suggest that there is a lack of corroborating evidence for Mr. Thomas. And since the Rule 29 standard of review says we're not here to weigh the evidence, re-weigh the evidence, we're not here to judge the credibility of any witnesses that testified at trial, we are to accept that Mr. Thomas' testimony was in fact credible because the jury reached a verdict after hearing it. What's the evidence on the firearm charge for the 76th Street robbery? On the 76th Street robbery, and I was going to get to that point that appellate counsel brought up. Not the robbery itself, but the firearm part of it. Correct. I would point this Court to review the transcripts related to Mr. Thomas' testimony and what appellate counsel does is try and break down each incident and what Mr. Thomas said during that period of direct examination. But what appellate counsel fails to do is then go further into the testimony in the transcript. And if you look at pages 787, 729, 756, 759, 776, 787, these pages in the transcript encapsulate all five robberies. So questions to Mr. Thomas say, what did you do with the gun from all five robberies? Mr. Thomas would say, I gave it back to Mr. Rivera. Mr. Thomas would say, was it the same gun, or the question would be, was it the same gun in all five robberies? Mr. Thomas replied, yes. Again, all five robberies. Questions were made, where was this gun kept? Mr. Thomas would say it was kept in the backpack and that the backpack was Mr. Rivera's and that the backpack was given to him by Mr. Rivera. And that Mr. Rivera kept the gun. It was his gun. It wasn't Mr. Thomas' gun. What's your response to your adversary's point that there's quite an argument that breaks out in the van after the Hampton or 76th Street robbery about what are you doing, there's no robbery going on here, and how does that fit with advanced knowledge as required by Roseman of use of a gun? What I would argue is that appellate counsel should review his own case that he cited with the Lawson case. In that Lawson case, his court pointed to the fact that jurors can take parts of testimony and weigh that and find it credible and other parts not credible. And the fact that you can weigh, in this well-settled law, that you can weigh different witnesses against each other, find one witness credible and the other not. So the fact that the jurors took parts of Ms. Zias' testimony credible, meaning she corroborated Mr. Thomas about the van and did not find her credible regarding this argument, should come as no surprise because we've already had five robberies outlined by Mr. Thomas that essentially play the same parts throughout. Mr. Rivera is the gun provider. Mr. Rivera is the getaway driver. Mr. Rivera is a lookout. Mr. Rivera splits the money with me. Five times that is laid out. So when we get to Ms. Zias to testify, and again, no one here in this courtroom but me and my colleague can recall Ms. Zias is the girlfriend of Mr. Rivera. She walks into the courtroom terrified. She's in near tears on the stand. She tells on direct to my colleague that she still has very strong feelings for Mr. Rivera and that she would protect him if she could. So the fact that she gives a statement that's a little self-serving to both her she is charged with this crime. But her evidence is not, her testimony is not relied upon. Is it to support the 924C charge on the 76th Street robbery? Her testimony was utilized to corroborate Mr. Thomas' statement regarding Mr. Rivera being the getaway driver in a Honda Odyssey which Mr. Rivera in his own statement to police on the second interview with Detective Fraley denies that he drove Mr. Thomas, states that he drove a black Toyota and that Emily came out alone. None of those things are true because Mr. Thomas and Ms. Zias both testify that all three were together in the car, all three were in a Honda Odyssey, and all three heard the sirens pursuing them. And when we get to Rosemann regarding advanced knowledge, what's important to remember here is that Rosemann, in Justice Kagan's opinion, made it very clear that what aiding and abetting law should not do is give someone like Mr. Rivera the opportunity to discharge their liability by turning the gun over to someone else. When you willingly get involved in a high-stakes criminal endeavor, i.e., armed robbery, you are taking great risk that these things might happen. You know, gun would be displayed, gun would be used. And when you do this five times, five times to say that you don't have advanced knowledge, when there's already testimony to say that this is your gun, you are providing the gun to the co-actor. I think it is talk about a leap or a gap or a giant inference in favor of Mr. Rivera, this would be a classic example of that. Is there any testimony from Thomas about how he got the gun in advance of the 76th Street robbery? I know he testified earlier or in several places about the gun being Rivera's and that he gave it back to him. But is there any testimony from Thomas about how or when he got the gun for that 76th Street robbery? Specifically, whether there's a sequence in which the gun was passed to me moments before walking in or anything like that. Sequence or non-sequence. Any testimony about how or when he got it. The specific timing of when he took possession of the gun for the 76th Street, there is not evidence. But there was a question that was posed to appellate counsel regarding what evidence essentially ties Mr. Thomas and Mr. Rivera in a similar way to the 76th. Appellate counsel forgets to mention that Mr. Thomas testifies that he wore the same clothes in the 13th Street Family Dollar as he wore in the 76th Street. Mr. Rivera is there at the 13th Street Family Dollar. He admits that. He admits being in the video. He would have seen Mr. Thomas wearing these clothes. And now, here we are at the 76th Street, Mr. Thomas is wearing the same clothes. And Mr. Thomas testified that the scarf he is wearing in both of those is Emily's scarf. So these things start to tie together where we can't just say Mr. Rivera was dropped in from outer space and has no clue what's going on each and every time. That defies logic. And when we look at a 33 motion, yes, the trial court can look and weigh the evidence. Yes, the trial court can weigh credibility issues. But the role of the trial court at that stage, it's a discretionary call. And it's one where we give the trial court great deference. And the trial court has to look at, wait a second. Was what was said or presented at trial somehow so far afield that weighing this would put the verdict in such a place that it's a miscarriage of justice? We didn't have Mr. Thomas testify that Mr. Rivera picked him up on a unicorn and rode to the 76th Street Family Dollar. We have Mr. Thomas consistently testifying to the same events. And when you read the transcript, appellate counsel likes to cite things that he believes are incredible. But I would like to point out the fact that Mr. Thomas has mental health problems, that doesn't make him incredible. The fact that Mr. Thomas made a statement originally to police that he wasn't involved and then tried to formulate some sort of coercion defense that Mr. Rivera forced him, that doesn't make him incredible now that he is saying I had the gun, I did these violent acts, that is me on all five of these videos committing these violent crimes. What's the evidence that the same gun was used in all these? The evidence is Mr. Thomas' statement consistently saying it's a 9mm Ruger that was owned by Mr. Rivera. And I would like to remind the court that in the Lawson decision, this court found the government could support a 924C decision or conviction based on a single eyewitness testifying that it was a real gun, even if there was some dispute as to whether or not it could be a replicant. The government is not required to produce the gun. The government is not required to produce corroborating evidence of the gun. If we are to weigh properly Mr. Thomas' testimony, the fact that he consistently said it's a 9mm Ruger throughout the trial and we recover shell casings of discharged rounds. Was there any video of any of the robberies? There is video of all five robberies, three of the robberies, the second, third, and fourth in the chronological sequence. Mr. Rivera admits being in those videos as done through a trial counsel, and on the last robbery, the 76th, Mr. Rivera admits in his final interview with law enforcement that he was outside in a car at that location when the robbery occurred. He just claims, I didn't know there was a robbery going on and I wasn't involved. At this time, if there's any more questions from the judges, the government rests on its brief. Thank you.